UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-cv-60209

SARA RODRIGUEZ,

    Plaintiff,

vs.

AUTONATION NISSAN
PEMBROKE PINES,

    Defendant.
_____/

## DEFENDANT'S MOTION COMPEL ARBITRATION AND/OR STAY LITIGATION AND INCORPORATED MEMORANDUM OF LAW

Defendant, AUTONATION NISSAN PEMBROKE PINES (the "Dealership"), by and through its undersigned counsel, respectfully moves this Court for the entry of an Order compelling arbitration and to stay litigation pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3 and 4, and the Arbitration Agreement between the Plaintiff and the Dealership requiring Plaintiff to arbitrate the claims alleged in the Complaint. In support of this Motion, the Dealership submits the following memorandum of law:

    1.    On February 3, 2023, Plaintiff, SARA RODRIGUEZ, commenced this action through the filing of a Complaint consisting of one count for violation of the Federal Consumer Leasing Act.[1]

    2.    Specifically, Plaintiff is seeking the recovery of damages in connection with her lease and subsequent purchase pursuant to a purchase option at the end of the lease term of the

---

[1] The Dealership has filed a Motion for Extension of Time to respond to the Complaint so as to preserve its right to move to dismiss the Complaint under Fed.R.Civ.P. 12 (i.e. for failure to state a cause of action) if Court denies the Motion to Compel Arbitration. Conrad v. Phone Directories Company, Inc., 585 F. 3d 1376, 1383 n. 2 (10th Cir. 2009) (a motion made under the FAA to compel arbitration or stay litigation is not a motion made under Fed.R.Civ.P. 12, and the filing of a motion to compel arbitration does not prevent a party from then filing a Rule 12 motion to dismiss if the motion to compel arbitration is denied).

2019 Hyundai Kona (the "Vehicle")[2], wherein she claims the Dealership charged and/or failed to disclose additional fees ($1,048.00) that were not provided for in the lease.

3. Plaintiff's claim for violation of 15 U.S.C.S. §1667a, 12 C.F.R. §213.4, and 12 C.F.R. §1013.3(a) pertain to the Dealership's alleged failure to disclose dealer and tag fees (totaling $1,048.00) relating to Plaintiff's purchase of the Vehicle at the end of the lease term. (Complaint ¶¶26-33).

**A.     Plaintiff's Claims Are Subject to Mandatory Arbitration**

4. On or about December 14, 2018, Plaintiff entered into a Motor Vehicle Lease Agreement (the "Lease Agreement"), a copy of which is attached hereto as Exhibit "A," to lease the Vehicle for 36 months. The Lease Agreement provided Plaintiff with an option to purchase the Vehicle at the end of the lease term.

5. The Lease Agreement provides in pertinent part that:

> Except as otherwise stated below, any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, lease or condition of this vehicle, this lease agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease) shall, your or our election, be resolved by neutral, binding arbitration and not by a court action.

6. On or about March 16, 2022, in connection with her purchase of the Vehicle, Plaintiff executed a Retail Purchase Agreement (the "Purchase Agreement"), a copy of which is attached hereto as Exhibit "B," which contains an Arbitration Provision. The Arbitration Provision provides in pertinent part that:

---

[2] While Plaintiff alleges in her Complaint that she leased a new 2019 Hyundai Kona (Complaint ¶5) in March 2022, the Lease Agreement reflects the Plaintiff actually leased a new 2018 Nissan Maxima on or about December 14, 2018.

2

>This section applies to Your: (a) purchase of the Vehicle, and purchase or lease of any other vehicle(s), including any negotiations or application(s) for credit or other dealings or interactions with Dealer and/or Dealer's parents, subsidiaries, affiliates, predecessors, successors, and assigns, and each of their respective owners, directors, officers, managers, employees, vendors and agents (hereinafter Dealer and all other parties listed in this subsection (a) collectively referred to as "Dealer Parties"); (b) servicing the Vehicle or any other vehicle(s) with any of the Dealer Parties; and (c) reviewing, negotiating or executing any documents or agreements during the course of interactions with any of the Dealer Parties (collectively, including all subparts listed above, "Purchaser/Dealer Party Interactions").
>
>You and Dealer agree that neutral and binding arbitration on an individual basis only will be the sole method of resolving any claim, dispute or controversy (collectively "Claims") that either party has arising out of or relating to Purchaser/Dealer Party Interactions, with the sole exception that either party may file and adjudicate Claims in a small claims court as an alternative to proceeding with arbitration. Claims include, but are not limited to the following: Claims in contract, tort, regulatory, statutory, equitable, or otherwise; Claims relating to any representations, promises, undertakings, warranties, covenants or service; Claims regarding the interpretation, scope, or validity of this Agreement, or arbitrability of any issue; Claims between You and Dealer Parties; and Claims arising out of or relating to Your application for credit, this Agreement and/or any and all documents executed, presented or negotiated during Purchaser/Dealer Party Interactions, or any resulting transaction, service, or relationship, including that with Dealer Parties, or any relationship with third parties who do not sign this Agreement that arises out of the Purchaser/Dealer Party Interactions.

The arbitration provisions contained in the Lease Agreement and the Purchase Agreement are hereinafter collectively referred to as the "Arbitration Agreement."

7.   Thus, pursuant to the express terms of the Arbitration Agreement, any and all claims in connection with the Plaintiff's negotiations, interactions, purchase, lease or financing of the Vehicle from the Dealership must be submitted to arbitration.

8.   In the instant case, the claims alleged against the Dealership all arise out of Plaintiff's lease and purchase of the Vehicle, in particular, claims of misrepresentation regarding the negotiations, purchase price, and lease terms of the Vehicle.

9. Under §3 of the FAA, in any lawsuit "referable to arbitration," the court "shall an application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. §3.

10. A series of United States Supreme Court and Florida Supreme Court decisions have emphasized that arbitration agreements are favored and will be enforced whenever possible. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) (as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitration); Southland Corp. v. Keating, 465 U.S. 1, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984) (in creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements); Roe v. Arnica Mut. Ins. Co., 533 So.2d 279 (Fla. 1988) (under Florida law, arbitration is a favored means of dispute resolution and courts indulge every reasonable resumption to uphold proceedings resulting in an award); Raymond James Financial Services, Inc. v. Saldukas, 896 So.2d 707 (Fla. 2005) (arbitration is a valuable right that is inserted into contracts for the purpose of enhancing the effective and efficient resolution of disputes); Information Technology and Engineering Corp. v. Reno, 813 So.2d 1053, 1054-1055 (Fla. 4th DCA 2002) (finding that the arbitration provision of an employment contract applied to claims of misappropriation of trade secrets, civil theft, and tortious interference with a business relationship).

11. The FAA embodies "the strong federal policy in favor of enforcing arbitration agreements." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217 (1985); Clay v. All Defendants, 389 F. 3d 1191, 1204 (11th Cir. 2004). Therefore, "a party resisting arbitration bears

the burden of proving that the claims at issue are unsuitable for arbitration." Green Tree Financial Corp., Ala. v. Randolph, 531 U.S. 79 (2000).

12.     Under the FAA, a district court must grant a motion to compel arbitration if it is satisfied that the parties agreed to arbitrate. 9 U.S.C. §3; John B. Goodman, Ltd. Partnership v. THF Construction, Inc., 321 F. 3d 1094, 1095 (11th Cir. 2003); Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987) ("a court must stay its proceedings if it satisfied that an issue before it is arbitrable . . .."); Dean Witter, 470 U.S. at 218 (the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that the district courts shall direct the parties to proceed to arbitration on issues as to which the Arbitration Agreement has been signed); Prima Paint Corp. v. Flood & Conklin Mfg., 388 U.S. 394, 404 (1967) (a district court reviewing a motion to compel arbitration is limited to reviewing issues relating to the making and performance of the arbitration agreement).

13.     A district court reviewing a motion to compel arbitration under the FAA must determine: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived. Home Quality Management, Inc. v. ACE America Ins. Co., 381 F. Supp. 2d 1363, 1365 (S.D. Fla. 2005). Here, all three standards are satisfied.

        **(i)     There Exists a Valid Written Arbitration Agreement**

14.     A party seeking to avoid arbitration based upon the making of the agreement must unequivocally deny an agreement to arbitrate was made and must offer evidence to substantiate the denial. Wheat, First Sec., Inc. v. Green, 993 F. 2d 814, 817 (11th Cir. 1993). The party challenging the arbitration provision must create a genuine issue of fact presenting "enough evidence to make the denial colorable." Chastain v. The Robbinsono-Humphrey Co., Inc., 957 F. 2d 851, 855 (11th Cir. 1992).

15.     In the instant case, there is a valid written agreement (Exhibit"B") to arbitrate, and Plaintiff has not alleged any basis to avoid the terms of the Arbitration Agreement. While Plaintiff has attached the Lease Agreement and Purchase Agreement as exhibits to the Complaint, which contain arbitration provisions, she has failed to attach complete copies of those documents.

16.     As a matter of law, the Plaintiff cannot avoid the consequences of the Arbitration Agreement simply because she elected not to read it or did not understand its terms before executing it, or because in retrospect the bargain turns out to be disadvantageous. <u>Murphy v. Courtesy Ford</u>, 944 So.2d 1131, 1134-35 (Fla. 3d DCA 2006). Consequently, because there exists a valid written arbitration agreement, the FAA requires arbitration of the Plaintiff's claims.

**(ii)     Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement**

17.     As to whether an arbitrable issue exists, a motion to arbitrate should not be denied unless it can be said "with positive assurance" that the arbitration clause cannot be interpreted to cover the dispute. <u>United Steel Workers of America v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582-83 (1960). Here, Plaintiff's claims against the Dealership all fall within the broad scope of the Arbitration Agreement which expressly encompasses "Claims in contract, tort, regulatory, statutory, equitable, or otherwise; Claims relating to any representations, promises, undertakings, warranties, covenants or service; Claims regarding the interpretation, scope, or validity of this Agreement, or arbitrability of any issue; Claims between You and Dealer Parties; and Claims arising out of or relating to Your application for credit, this Agreement and/or any and all documents executed, presented or negotiated during Purchaser/Dealer Party Interactions, or any resulting transaction, service, or relationship, including that with Dealer Parties, or any relationship with third parties who do not sign this Agreement that arises out of the Purchaser/Dealer Party Interactions."

18. Language similar to the language contained in the Arbitration Agreement has been interpreted broadly to "encompass virtually all disputes between contracting parties, including related tort claims." Blinco v. Green Tree Servicing, LLC, 400 F. 3d 1308, 1311 (11th Cir. 2005) (broadly construing agreement to arbitrate any dispute "arising from or relating to" the contract at issue); Industrial Risk Insurer v. M.A.N. Gutehoffnungshutte GmbH, 141 F. 3d 1434, 1449 n. 21 (11th Cir. 1998) (if allegations in underlying claims touch matters covered by the parties' arbitration agreement, then claims must be arbitrated, whatever legal labels are attached to them).

19. Further, under Florida law, a buyer's common law and statutory claims regarding an automobile dealership's trade practices are subject to arbitration. Murphy v. Courtesy Ford, 944 So.2d 1131 (Fla. 3d DCA 2006); Stewart Agency, Inc. v. Robinson, 855 So.2d 726 (Fla. 4th DCA 2003) (claims under FUDTPA are subject to arbitration); Value Car Sales v. Bouton, 608 So.2d 860 (Fla. 5th DCA 1992); (arbitration clause in agreement between used car seller and purchaser required arbitration of purchaser's claims for breach of contract, fraud, conversion, wrongful repossession and civil theft); Charbonneau v. Morse Operations, Inc., 727 So.2d 1017 (Fla. 4th DCA 1999); Qubty vs. Nagda, 817 So.2d 952, 956 (Fla. 5 DCA 2002).

20. Here, all Plaintiff's claims against the Dealership are premised upon her negotiations leading up to the lease, purchase and financing of the Vehicle. It should be noted that Plaintiff attached a partial copy of the Lease Agreement and Purchase Agreement as exhibits to the Complaint, but failed to attach a full copy of the documents which contain the Arbitration Agreement. Accordingly, because Plaintiff's claims fall within the broad scope of the Arbitration Agreement, the Plaintiff's claims are arbitrable and the Motion to Compel Arbitration must be granted.

### (iii)   The Dealership Has Not Waived the Right to Arbitration

21.   There is also no evidence that the Dealership has waived the right to arbitrate. "[W]aiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with the intent to arbitrate." Ivax Corp. v. B. Braun of America, Inc., 286 F. 3d 1309, 1316 (11th Cir. 2002). Here, the Dealership has not exhibited any conduct constituting a waiver of its arbitration right or that the Plaintiff has suffered any prejudice.

22.   Because a valid Arbitration Agreement exists, Plaintiff's claims fall within the scope of that agreement, and the Dealership has not waived the right to arbitrate under the agreement, this Court should grant the Motion to Compel Arbitration.

**B.   Plaintiff Has Waived Her Right to a Jury Trial**

23.   Through the Complaint, Plaintiff has demanded a trial by jury. However, the Arbitration Agreement signed by the Plaintiff expressly provides that the Plaintiff shall proceed to arbitration in connection with any disputes arising from Plaintiff's purchase and financing of the Vehicle. Accordingly, Plaintiff's demand for trial by jury must be stricken, and Plaintiff must be compelled to proceed to arbitration.

24.   Defense counsel certifies he has attempted to contact Plaintiff's counsel regarding the parties' written agreement to proceed to arbitration, but Plaintiff's counsel has not responded to such inquiries.

WHEREFORE, Defendant, AUTONATION NISSAN PEMBROKE PINES, moves this Court for the entry of an Order compelling arbitration of the Plaintiff's claims set forth in the Complaint, staying this action, for an award of attorneys' fees and costs incurred in connection with this Motion, and for such other and further relief as is deemed just and proper.

I HEREBY CERTIFY that a true and correct copy of the foregoing has served through electric filing this 14th day of March, 2023 to: DARREN R. NEWHART, ESQ., P.O. Box 1351, Loxahatchee, Florida 33470 and to JOSHUA FEYGIN, ESQ., 1930 Harrison Street, 208F, Hollywood, Florida 33020.

      LAW OFFICE OF RICHARD A. IVERS
      Counsel for Defendant
      6131 Lyons Road, Suite 201
      Coconut Creek, Florida 33073
      Telephone: (954) 757-6262
      Facsimile: (954) 757-6594

By: s/.Richard A. Ivers
    RICHARD A. IVERS
    Florida Bar No.: 890261